JOHN LILLY v. MOSES QUICK.

Where a lost mortgage has been established, by a decree of the court, as a valid and subsisting incumbrance, the subsequent finding of the mortgage in the hands of a third person, cancelled, without further evidence, will not vary the case, nor induce the court to alter the decree.

Tearing off the seals of a mortgage, or even its entire destruction, by an unauthorized person, will not cancel it. It must be cancelled by consent of the owner.

THIS was a bill of review. On the 10th of July, 1824, Moses Quick, the defendant in this cause, filed a bill in the court of chancery of New-Jersey, for the foreclosure of a mortgage given to him by George Johnson and Eliza his wife. The bill

charged, that the mortgage bore date on the 17th of March, 1813, and was given to secure the payment of a bond bearing even date, given by Johnson to Quick, in the penal sum of two thousand dollars, conditioned for the payment of one thousand dollars, with interest, on the first of May, 1814, and that it was duly acknowledged and recorded. The bill further charged, that the bond and mortgage had been mislaid and lost, and could not be found : that the principal, together with a large arrear of interest, remained due to the complainant ; and that the mortgage had become absolute at law. It further charged, that John Beaumont had recovered a judgment, which was a lien upon the premises, subsequent to the complainant's mortgage, and that the equity of redemption had been conveyed from Johnson the mortgagor, and by sundry mesne conveyances had become vested in John Lilly, who was made one of the defendants in the bill. The bill contained the usual prayer for foreclosure and sale of the mortgaged premises.

To this bill, George Johnson and John Lilly filed a joint and several answer, whereby they admitted the giving of the bond and mortgage, as charged in the bill, but insisted that, on the 19th of June, 1815, Johnson and wife sold and conveyed the mortgaged premises, subject to Quick's mortgage, to one Caroline Branham, for one thousand four hundred and fifty dollars ; that subsequently Johnson, in pursuance of an agreement between him and said Caroline Branham, gave his note to Quick, (the complainant,) for the balance due on his bond, took up the bond and mortgage, and cancelled them by tearing off his own and his wife's name ; that he intended to take the mortgage to the office to be cancelled of record, but that it was mislaid by accident and could not be found. It is further alleged in the answer, that Lilly was afterwards employed by Caroline Branham as her agent, to see that the mortgage was cancelled ; that he saw the mortgage in Johnson's possession cancelled ; and that Quick repeatedly admitted that the mortgage had been taken up, and promised Lilly that it should be cancelled upon the record.

The cause came on for final hearing before chancellor Vroom,

[Lilly v. Quick.]

upon the bill, answer, replication and proofs; and it appearing to the chancellor that the bond and mortgage were duly executed, that a part of the monies intended to be secured thereby still remained unpaid, that the bond and mortgage had been lost or destroyed, and another bond and mortgage made by Johnson to the complainant on other property which proved to be unavailing, but that the complainant had not agreed to give up his original mortgage, or to relinquish his lien upon the mortgaged premises; and that the taking of the subsequent bond and mortgage was not an extinguishment of the lien and incumbrance of the original mortgage upon the premises therein mentioned; on the 16th of October, 1839, a final decree was made, establishing the original mortgage as a valid and subsisting lien upon the premises therein contained.

John Lilly, one of the defendants, obtained an order for rehearing in said cause, and also by permission of the court filed a bill of review, on the ground of the discovery of new matter since the decree in the original cause. The matter was heard upon the order for the rehearing, and also upon the bill of review, at the same time.

*Simpson* and *Williamson*, for complainant.

*Saxton* and *Wall*, for defendant.

THE CHANCELLOR. Chancellor Vroom, at October term, 1830, made a decree in favor of Moses Quick, upon a bill filed by him, establishing as a valid and subsisting lien, a mortgage given by the defendants, George Johnson and wife, to the complainant, the equity of redemption in which mortgage that bill sought to foreclose. John Lilly, one of the defendants, feeling himself aggrieved by the decision of the chancellor, filed a petition and obtained the order of the court for a rehearing in said original cause. He also, by permission of the court, instituted this suit, to review the decree made in the original action, on the ground of new proof which had

come to light after the decree was made.  I am to consider the case, then, upon the order for a rehearing in the original action, and upon the bill of review, which presents the whole·subject at a single view.

The case turns upon a question of fact.  The bond and mortgage, which are the subjects of controversy, the complainant alleges he lost or mislaid ; while the defendant insists they were given up by him to be cancelled.  As the evidence shall satisfy the mind on this disputed matter, so must the decision of the court be.  Chancellor Vroom has gone carefully over all the evidence, and given it a very fair and just consideration.  I have bestowed on the evidence, and the opinion of the chancellor, all the care and attention in my power, and I do not see how it is possible to come to any other conclusion upon the case as it stood before him, than that at which he arrived.  As that opinion is a very full one, going into the evidence minutely, it would be labor lost to repeat the views there expressed.

From the whole evidence, I have come to the following conclusions :—

1. That the mortgage was never in good faith given up by the complainant to be cancelled.  He no doubt repeatedly declared his willingness to have it cancelled, if Johnson would pay off the debt to Holcomb, which was then the only difficulty in the way.  It would be out of the ordinary course of events to suppose, that a man who had become bound for the debts of another, and had the caution to require as his indemnity a mortgage on his property, would relinquish that security voluntarily, and that without taking at the time even a note or any other evidence of the debt due him.  Such might have been the case, but it is altogether improbable.

2. The evidence of George Johnson is no way satisfactory.  Upon the cross-examination it is manifest that his recollection of the whole transaction is very little to be depended on.  He admits that when the mortgage was given up, he, Johnson, agreed to take up the bond and mortgage of Holcomb.  He says he immediately tore the names almost off of the papers, and yet when

[Lilly v. Quick.]

the papers are found, no part of the names are torn off at all. He says, too, that he then thought tearing off the names was sufficient to destroy it. This witness then admits, that about six months after this, Quick became uneasy, and he gave him other security : that Quick came to his house several times to find the old mortgage. If that mortgage was really cancelled, what could have made him so anxious about it? The truth is, I have no doubt, that Johnson had the old mortgage, but never upon the fair agreement of the complainant, unconditional, that it should be cancelled. As to giving the new security, nothing could be more natural. He had lost his papers, and he no doubt considered the loss of the papers as fatal—that there was an end to that security, and he called for other. This would not defeat his claim on the old mortgage unless it was so agreed, and that upon all the authorities cited. The security was of no higher character, and unless expressly taken with an understanding that the first should be put an end to, cannot affect it, even though the complainant at the time may have supposed all security under it was gone. I was struck with the evidence of Elnathan Stevenson, a witness called by the defendant, on this subject. This gentleman was called upon to write the new bond and mortgage which were given by Johnson to Quick in 1821 ; and complainant then said he had held a mortgage, but it was lost, or could not be found, or something to that effect. He says this new mortgage was taken in *place*, as he understood, of the other. But was it understandingly and plainly agreed by Quick to relinquish any claim he might have on the old mortgage? No witness says so.

3. I consider the distinct and plain acknowledgment in writing made by George Johnson, at the office of Mr. Saxton, as important. This is the main witness relied on by the defendant to prove that these papers were cancelled, and yet by that paper, on the 5th of January, 1824, he declares, in a formal instrument of writing, drawn up and executed under his hand and seal, in the presence of two witnesses, that he is informed and believes that the said bond and mortgage have been lost or mislaid, and

were in full force and effect as a security for the sum of five hundred dollars. This writing was signed just before the original bill was filed, and after the second bond and mortgage were drawn by Elnathan Stevenson. I see no circumvention or fraud in obtaining this paper. The complainant had learnt that the loss of a mortgage was not a loss of the security, if that fact could be proved, and before filing a bill he obtained the acknowledgment of the mortgagor that it was, as he believed and was informed, lost or mislaid, and was at all events in full force. The subscribing witness, Mr. Bartles, declares that the paper was read over to Johnson before it was executed, and that he witnessed it at his request. On his examination, Johnson professes not to know what he signed at Mr. Saxton's office. He recollects its being read over to him, and upon the paper being again shown and read in his hearing on his examination, he says that is something like what was said at the time he signed it. When he stated in the paper that the mortgage was lost, he says, he did not mean Quick had lost it, but that it was lost after it came into his possession. What reliance can be placed on this witness, upon such contradictory statements? To say the least, it is not that kind of evidence upon which an important decree of this court should be founded. This paper has been objected to, however, by doctor Lilly's counsel, because it was signed by Johnson after Lilly's title to the property was acquired, and therefore cannot affect his interest. It must be recollected that Johnson is the witness of the defendant, Lilly, and this paper is, therefore, competent, if for no other purpose, to contradict the statement now made by the witness, and to show that he has held different language on this subject at different times.

4. That although it is not necessary that I should be able to satisfy myself how, or when, this mortgage came out of complainant's hands, so long as I am clear that he never gave it up to be cancelled, yet it would be very desirable to do so. It is most probable, to my mind, that the papers were lost at the time mentioned in the testimony of Andrew Wilson. The parties had both been drinking; they went to stay at Johnson's all night,

[Lilly v. Quick.]

and it is quite probable they could not have told in the morning with precision what had taken place the night before. Johnson, in his evidence, declares it was at his house that the mortgage was given up to him.

Being thus satisfied with the decision made by the chancellor in the original cause, it remains to see what effect is to be given to the new proof discovered since the decree. That proof is nothing more nor less than finding the mortgage itself, in the hands of Asher Lambert. This gentleman has been examined, and states that he found the mortgage in the same situation in which he exhibits it, among the papers of Cornelius Coriell, deceased, upon whose estate the witness administered. He saw it first in 1824, but not thinking it of any consequence, never mentioned it to doctor Lilly until the May preceding the time of his examination. How this mortgage came among the papers of Mr. Coriell, does not appear from any thing except hearsay evidence, which was properly objected to, and must be overruled. The only other witness examined under the bill of review, is Emley Holcomb. His testimony sheds no light on the case as I can perceive, stript as it must be of mere hearsay evidence. There is nothing new, therefore, in the case, except the finding and production of the mortgage; but how it came at Mr. Coriell's does not appear. When the mortgage is produced, the seals are torn off, but the signatures remain on it. We are left as much in the dark as ever. The tearing off the seals, by an unauthorized person, will not cancel it, nor indeed its entire destruction. It must be given up and cancelled by consent of the owner. The mortgage has long been out of his possession, and the same hand that would improperly retain a lost instrument, could take off the seals. In fact, Johnson swears that he tore the names off himself. I make no question that Mr. Coriell received the paper fairly, so far as he was concerned, but for what object, or from whom, is not shown. It would be natural to look for a paper of this kind, given up to be cancelled, in the hands of the mortgagor, especially if he took it up; but here it is found in the hands of a stranger.

I am clearly of opinion, upon the whole case, that the weight of evidence is in favor of the mortgage, and that it has been rightly adjudged a valid and subsisting lien on the mortgaged premises.

Upon the original suit, therefore, I see no reason to disturb the decree made by chancellor Vroom ; and as the bill of review shows no new matter which can vary this result, this bill must be dismissed with costs.

Bill dismissed.